Bert L. Roos, Esq.
BERT L. ROOS, PC
5045 N. 12th St., #B
Phoenix AZ 85014
Ph.:   602-242-7869
Fax:   602-242-5975
Blrpc85015@msn.com

Attorneys for Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re<br><br>DANNY'S HAPPY VALLEY, LLC, *et al.,*<br><br>Debtors.<br><br>This filing applies to:<br><br>☐   All Debtors<br>■   Specified Debtors:<br><br>• February Debtors | Chapter 11<br><br>Case No. 2:10-bk-02794-EWH<br>**Jointly Administered With:**<br><br>2:10-bk-02796-EWH    2:10-bk-02799-EWH<br>2:10-bk-02802-EWH<br>2:10-bk-05580-RJH    2:10-bk-05583-RJH<br>2:10-bk-05585-RJH    2:10-bk-05588-RJH<br>2:10-bk-05792-SSC    2:10-bk-05793-SSC<br>2:10-bk-05794-SSC    2:10-bk-05795-SSC<br>2:10-bk-05796-SSC    2:10-bk-05797-SSC<br>2:10-bk-05798-SSC    2:10-bk-05799-SSC<br>2:10-bk-05800-SSC    2:10-bk-05801-SSC<br>2:10-bk-05802-SSC    2:10-bk-05805-SSC<br>2:10-bk-05806-SSC    2:10-bk-05772-JMM<br>2:10-bk-05774-JMM    2:10-bk-05775-JMM<br>2:10-bk-05776-JMM<br><br>**EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL** |

DANNY'S HAPPY VALLEY, L.L.C., DANNY'S RAINTREE & NORTHSIGHT, L.L.C., DANNY'S SCOTTSDALE & SHEA, L.L.C., and DANNY'S 59TH AVENUE, L.L.C. (collectively, the "February Debtors"), hereby file this Emergency Motion For Entry Of an Interim And Final Order Authorizing the February Debtors to Use Cash Collateral (the "Motion").

**I. BACKGROUND**

1. On February 3, 2010 (the "Petition Date"), the February Debtors filed their respective voluntary petitions for relief under Chapter 11 Title 11 of the United State Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Arizona. Pursuant to §§ 1007(a) and 1008 of the Bankruptcy Code, the February Debtors are managing operations as debtors-in-possession.

2. On March 4, 2010, the above-captioned Debtors, excluding the February Debtors (the "March Debtors"), filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. Pursuant to §§ 1007(a) and 1008 of the Bankruptcy Code, all Debtors are managing their operations as debtors-in-possession.

3. M&I Marshall & Ilsley Bank ("M&I"), asserts a first-priority security interest in certain of the February Debtors' assets existing as of the Petition Date, including cash collateral.

4. On February 5, 2010, M&I filed its Emergency Motion By M&I Marshall & Ilsley Bank to Confirm Segregation And Sequestration of Cash Collateral, and Notice of Non-Consent To Use of Cash Collateral (the "Non-Consent Motion"). In the Non-Consent Motion, M&I asserted its first-priority security interest, and indicated that it had not consented to the February Debtors' use of its cash collateral.

5. On February 11, 2010, the February Debtors filed their Emergency Motion to Approve Use of Cash Collateral (the "First Cash Collateral Motion").

6. The Court held a hearing on the Non-Consent Motion on February 11, 2010. At that hearing, the February Debtors and M&I reached an agreement under which the February Debtors were permitted to use cash collateral, on an interim basis. The Court scheduled a continued hearing on the February Debtors' use of cash collateral for February 17, 2010.

7. At the February 17, 2010 hearing, the February Debtors and M&I again informed the Court that an agreement had been reached, on an interim and short term basis, under which the February Debtors would be permitted to continue using cash collateral for ordinary and necessary business expenses. A similar discussion took place at the February 25, 2010 hearing on the use of cash collateral, only at this hearing the parties indicated that an agreement had been reached, and that a stipulated order would be filed.

8. The February Debtors and M&I subsequently lodged an Agreed Interim Order authorizing the February Debtors' use of cash collateral, and such Order was signed by the Court on March 10, 2010 (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order has an expiration date of April 4, 2010.

9. On March 23, 2010, the February Debtors filed an Application to Employ Michael W. Carmel, Ltd., as Co–Counsel for the February Debtors. On March 23, 2010, the March Debtors also filed an Application to Employ Stinson Morrison Hecker, LLP as Co-Counsel for the March Debtors. Both Applications remain pending before this Court.

10. As this Court is aware, the February and March Debtors run extensive car wash operations. It is absolutely critical to the their businesses that they have access to, and be permitted to use, their cash collateral. The March Debtors have been engaged in extensive negotiations with their secured creditors, and it is expected that a final stipulated order approving the March Debtors' use of cash collateral will be filed by April 5, 2010. The February Debtors have been using cash collateral pursuant to the Interim Cash Collateral Order, but the Interim Cash Collateral Order is set to expire on April 4, 2010.[1] The February Debtors have been working with M&I, but to date, no agreement has been reached on the February Debtors' use of cash collateral going forward.

---

[1] M&I also asserts that it terminated the Interim Cash Collateral Order via email dated March 29, 2010. The February Debtors dispute that the Order was properly terminated.

## II   RELIEF REQUESTED

11.   Through this Motion, the February Debtors seek immediate entry of an interim order, until such time as the order may become final after a hearing and proper notice thereof, permitting them to use cash collateral on terms materially the same as those being negotiated with the March Debtors' secured creditors. Those terms are outlined below:

    a. *Authorization to Use Cash Collateral.* The February Debtors may use the Cash Collateral[2] in accordance with and subject to the terms and conditions of the Order until a Termination Event (defined below). Except as expressly permitted in the Order, neither the February Debtors nor any other entity may use, sell, lease, or otherwise dispose of any part of the Cash Collateral without prior approval of the Court, or M & I's written consent.

    b. *Ordinary Course Limitation on Use.* Except as otherwise provided in the Order, and subject to such other and further agreements between M&I and the February Debtors, the February Debtors may use Cash Collateral only in the ordinary course of business and only to pay ordinary, necessary, actual, and reasonable business expenses, when and as those expenses become due, in accordance with the budget prepared by the February Debtors' management and as attached to this Motion as **Exhibit A (the "Budget")**[3]. Any deviations from the Budget in excess of 10% per line item or additional expenditures not contained in the Budget, shall require M&I's written consent or Court approval. February Debtors may also use the Cash Collateral to pay any and all administrative fees and costs, or interim allowances, associated with their bankruptcy and approved by the Court, including their counsel and other professionals.

---

[2] Cash Collateral shall have the meaning provided in Section 363(a) of the Bankruptcy Code.
[3] The Budget is also attached to this Motion as Exhibit A.

c. *Reporting.* The February Debtors must timely file all reports, pleadings, and papers they are required to file with this Court or the United States Trustee, including, without limitation, monthly operating reports, and must provide counsel to M&I with copies of all pleadings, papers, and reports the February Debtors file in connection with these cases when filed. The February Debtors must also timely provide to M&I, within five business days, all reports or other information that M&I reasonably requests or is required by the Carwash Loan[4] documents. Without limiting the foregoing, the February Debtors must prepare and deliver to M&I a bi-weekly (every other week) cash-on-cash reconciliation and comparison of actual results versus the Budget (the "**Cash Report**"). The February Debtors must deliver the Cash Report for the preceding two weeks no later than 5:00 p.m. Arizona time on the Thursday following each respective two week reporting period.

d. *Access to Information.* M&I or its designated representative, on at least five business days prior notice to the February Debtors, may inspect the February Debtors' books and records at any time during normal business hours at the February Debtors' corporate offices. M&I also retains and may exercise all rights to inspection and other information provided for in the Carwash Loan documents. To the extent available and as M&I may request, subject to an appropriate confidentiality agreement (below), the February Debtors must provide to M&I copies of all the February Debtors' financial records including, without limitation, audited (if any) and unaudited financial statements and any other reasonably-available information regarding the February Debtors' revenues and expenses. The February Debtors must, at all reasonable times, cooperate with M&I and provide to M&I's representatives reasonable access to the

---

[4] Carwash Loan shall be defined as and refer to the loan made from M&I to the February Debtors.

February Debtor's corporate offices where the February Debtors' books and records are kept, so that M&I may monitor its Prepetition Collateral, its Postpetition Collateral (defined below), and otherwise protect its interests. The February Debtors must cooperate with M&I in all reasonable respects regarding M&I's reasonable inquiries into any matters pertaining to the February Debtors and their estates or the Cash Collateral.

e. *Confidentiality.* Prior to receiving or gaining access to the reports and information set forth in paragraphs 3 and 4 herein, M&I shall execute a reasonable confidentiality agreement ensuring that such reports and information are kept private and confidential, and not disclosed without the February Debtor's written consent.

f. *Adequate Protection.* As adequate protection for any diminution in value of the Prepetition Collateral[5] or in the proceeds, products, offspring or profits of Prepetition Collateral that constitutes Cash Collateral and for any use and depletion of Cash Collateral, as required under Bankruptcy Code §§ 361, 363(c), and 363(e), and in consideration of M&I's consent to the February Debtors' use of the Cash Collateral:

    i. *Administrative Expense Claim* – M&I has a first priority administrative expense claim in an amount equal to the diminution in value of the Prepetition Collateral resulting from the February Debtors' use of Cash Collateral (the "**Adequate Protection Claim**"), but the Adequate Protection Claim does not attach to or encumber any avoidance actions arising under Chapter 5 of the Bankruptcy Code or the proceeds of those avoidance actions (the "**Avoidance Actions**")

    ii. *Replacement Liens —* Except to the extent that there is already a first-priority lien on such assets, in which case the lien granted to M&I shall be junior thereto, M&I has a first-priority, valid, enforceable, perfected, and unavoidable

---

[5] Prepetition Collateral shall refer to and mean the February Debtors' assets that were subject to M&I's security interest as of the Petition Date.

replacement lien on all the February Debtors' interests in all assets obtained after the Petition Date that would have been subject to M&I's Prepetition Liens but for the filing of these Chapter 11 Cases (the "**Postpetition Collateral**"), to the extent of any diminution in value of the Prepetition Collateral resulting from the February Debtors' use of Cash Collateral, to secure the M&I Secured Claim, except that the liens granted on the Postpetition Collateral (the "**Replacement Liens**") do not attach to or encumber any Avoidance Actions;

   iii. *Compliance with Loan Documents —* Except to the extent modified by this Order, the Bankruptcy Code, or other order of this Court, the February Debtors must comply with and perform all covenants and obligations set forth in the Carwash Loan documents;

   iv. *Cash Management —* The February Debtors will continue to establish and maintain debtor-in-possession bank accounts as the sole operating accounts for the February Debtors' operations and cash transactions from and after the Petition Date, combining, at the February Debtors' discretion and with M & I's and the U.S. Trustee's consent or separate order of the Court, the operations and cash transactions of all the February Debtors, but maintaining strict separation of all cash and transactions of the February Debtors from any cash and transactions of any other entity, including any of the March Debtors;

g. *Postpetition Collateral.* The Replacement Liens are in addition to all liens and rights existing in M&I's favor as of the Petition Date and, on entry of this Order, the Replacement Liens are automatically valid, perfected, enforceable, unavoidable, and effective as of the Petition Date without the execution, delivery, filing, or recordation of any financing statements, instruments, or other documents under applicable non-bankruptcy law. The Replacement Liens are senior to all claims, liens, and interests arising on or after the Petition Date on property of the February Debtors or of the estates except the Avoidance Actions. The Debtors must execute and deliver any financing

statements, instruments, or documents M&I may reasonably request with respect to the Postpetition Collateral. The automatic stay of Bankruptcy Code § 362(a) is modified to the extent necessary to permit M&I to request, receive, file, or record any such financing statements, instruments, and documents.

h. *Termination of Right to Use Cash Collateral.* The February Debtors' right to use the Cash Collateral automatically terminates, except as otherwise set forth below, immediately without notice, demand, order, or other action, upon the occurrence of any of the following events (each a "**Termination Event**"):

　i. The Court does not enter a final Order providing substantially the same relief granted in the Interim Order and superseding the prior Interim Order by 5:00 p.m. on April 2, 2010;

　ii. The February Debtors pay in full the M&I Secured Claim;

　iii. The Court enters an order prohibiting the February Debtors from using the Cash Collateral;

　iv. The February Debtors fail to comply with any material term, condition, or covenant contained in the Order or the Carwash Loan documents (except as excused or modified by this Order), where such failure continues uncured for five business days after notice to the February Debtors, the Committee, and the U.S. Trustee;

　v. The February Debtors cease operating three or more of their business locations, where such cessation continues uncured for three business days after notice to the February Debtors, the Committee, and the U.S. Trustee;

　vi. The February Debtors sell all or substantially all property of the estates;

　vii. The Court enters an order (i) appointing a trustee or an examiner with expanded or special powers to operate the February Debtors' business, (ii) dismissing one or more of the February Debtors' cases, or (iii) converting one or more of the February Debtors' cases to Chapter 7;

viii. A lien attaches on any Prepetition Collateral or Postpetition Collateral that is equal or senior to any lien held by M&I on that collateral, other than a senior lien expressly permitted under the Carwash Loan documents;

ix. The Court enters an order granting relief from the automatic stay, allowing any entity to proceed against any material asset of any of the February Debtors;

x. The February Debtors file any motion to alter or amend the Order other than a motion for entry of a final order substantially identical to this interim Order.

i. *Section 363(c)(2) and (c)(4).* Once a Termination Event occurs, the February Debtors may not use, sell, or lease the Cash Collateral, and must immediately segregate and account for any Cash Collateral in the February Debtors' possession, custody, or control, and hold such Cash Collateral for M&I's benefit, subject to further order of this Court.

j. *Authority for February Debtors' Actions.* The February Debtors are authorized and directed to perform all acts and execute and comply with the terms of any documents, instruments, and agreements necessary to effect or facilitate the Order.

k. *Loan Documents.* The February Debtors must continue to perform the terms and conditions in the Carwash Loan documents except if the Order expressly provides otherwise. If the Order and the Carwash Loan documents conflict, the Order controls.

l. *No Priming.* The February Debtors may not propose, or consent to a proposal, to obtain credit for the February Debtors secured by a lien that is senior or equal to the Prepetition Liens or the Replacement Liens without M&I's prior written consent.

m. *No Waivers by M&I.* The Order does not waive: (a) M&I's right to seek relief from the automatic stay under Bankruptcy Code § 362(a); (b) M&I's right to seek any other relief under the Bankruptcy Code, including objections and claims relating to the use, sale, or other disposition of the Prepetition Collateral or the Postpetition Collateral; (c) any argument by M&I that it is not adequately protected for any purpose; (d) any position M&I may take regarding the value of any property of the estates or the

presence or absence of equity in such property; (e) except as otherwise expressly set forth in this Order, any of M&I's rights, remedies, claims, powers, benefits, and privileges under the Carwash Loan documents, the Bankruptcy Code, and applicable non-bankruptcy law. Delay in exercising or failing to exercise any of M&I's rights, remedies, claims, powers, benefits, or privileges does not constitute M&I's waiver and does not subject M&I to any liability to any entity.

    n.   *Modification.* No provision of this Order may be modified without the prior written consent of the February Debtors and M&I.

### III. CONCLUSION

It is critical to the continuation of their business operations that the February Debtors be permitted to use their cash collateral. In reality, the cash collateral subject to M&I's prepetition security interest is limited to the February Debtor's cash on hand, inventory and accounts receivable that existed on the Petition Date. Such amount were not substantial and the terms set forth herein provide adequate protection for such comparatively small cash collateral interests.

BASED ON THE FOREGOING, the February Debtors respectfully request entry of an interim Order, to become final following a hearing thereon, on the terms set forth in this Motion.

DATED this 31st day of March, 2010.

                    /s/Bert L. Roos
                    Bert L. Roos, Esq.
                    Attorney for Debtor

COPY of the foregoing sent
this 31st day of March, 2010, to:

U.S. TRUSTEE
OFFICE OF THE U.S. TRUSTEE
230 NORTH FIRST AVENUE
SUITE 204
PHOENIX, AZ 85003

| | |
|---|---|
| 1 | CHRISTOPHER J PATTOCK |
| | OFFICE OF THE U.S. TRUSTEE |
| 2 | 230 N. FIRST AVE., #204 |
| | PHOENIX, AZ 85003-1706 |
| 3 | Attorney for U.S. Trustee |
| 4 | |
| | WILLIAM NOVOTNY |
| 5 | MARISCAL, WEEKS, MCINTYRE, & FRIEDLANDER |
| | 2901 N. CENTRAL AVE., #200 |
| 6 | PHOENIX, AZ 85012-2705 |
| 7 | J. MATTHEW DERSTINE |
| 8 | ROSHKA DEWULF & PATTEN, PLC |
| | ONE ARIZONA CENTER |
| 9 | 400 E. VAN BUREN ST., #800 |
| | PHOENIX, AZ 85004 |
| 10 | Attorney for Scottsdale Place, L.L.C. |
| 11 | BARBARA LEE CALDWELL |
| | AIKEN SCHENK HAWKINS & RICCIARDI P.C. |
| 12 | 4742 N 24TH ST STE 100 |
| | PHOENIX, AZ 85016 |
| 13 | Attorney for MARICOPA COUNTY |
| 14 | |
| | QUARLES & BRADY LLP |
| 15 | 2 N. CENTRAL AVENUE |
| | PHOENIX, AZ 85004-2391 |
| 16 | Attorney for M&I MARSHALL & ILSLEY BANK |
| 17 | DALE C. SCHIAN |
| | SCHIAN WALKER, P.L.C. |
| 18 | 3550 N. CENTRAL AVE. #1700 |
| 19 | PHOENIX, AZ 85012-2115 |
| | Attorney for FNBN-CMLCON I, LLC |
| 20 | |
| | CHARLES H. HOUSTON, III |
| 21 | GONZALES SAGGIO & HARLAN, LLP |
| | 3030 N. THIRD ST., #1300 |
| 22 | PHOENIX, AZ 85012 |
| 23 | Attorney for Equilon Enterprises, LLC |
| 24 | MICHAEL W. CARMEL |
| | MICHAEL W. CARMEL, LTD. |
| 25 | 80 E. COLUMBUS AVE |
| | PHOENIX, AZ 85012-4965 |
| 26 | |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | STINSON MORRISON HECKER LLP |
| | 1850 N CENTRAL AVE #2100 |
| 2 | PHOENIX, AZ 85004 |
| 3 | |
| | JORDAN A KROOP |
| 4 | SQUIRE SANDERS & DEMPSEY LLP |
| | TWO RENAISSANCE SQUARE |
| 5 | 40 N CENTRAL AVE STE 2700 |
| | PHOENIX, AZ 85004-4498 |
| 6 | Attorney for Comerica Bank |
| 7 | |
| | APRIL J. VILLARREAL THEIS |
| 8 | OFFICE OF THE ATTORNEY GENERAL |
| | 1275 W. WASHINGTON |
| 9 | PHOENIX, AZ 85007-2926 |
| | Attorney for ARIZONA DEPARTMENT OF REVENUE |

By: Bert L. Roos_____

Projected April Cash Receipts & Disbursements
Danny's Scottsdale & Shea, LLC

| | April 5- April 11 | April 12- April 18 | April 18- April 24 | April 25- May 1 |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| Gasoline Sales | 88,000.00 | 88,000.00 | 88,000.00 | 88,000.00 |
| C-Store Sales | 13,800.00 | 13,800.00 | 13,800.00 | 13,800.00 |
| Total Cash Receipts | $101,800.00 | $101,800.00 | $101,800.00 | $101,800.00 |
| | | | | |
| **Cash Disbursements** | | | | |
| Gasoline | 85,000.00 | 85,000.00 | 85,000.00 | 85,000.00 |
| C-Store Labor | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 |
| C-Store Lobby Inv | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| Bank Charges | 0.00 | 0.00 | 1,000.00 | 0.00 |
| Credit Card Fees | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 |
| Insurance | 0.00 | 0.00 | 500.00 | 0.00 |
| Admin Labor Expenses | 900.00 | 900.00 | 900.00 | 900.00 |
| Licenses, Taxes, Fees | 625.00 | 625.00 | 625.00 | 625.00 |
| Rent & Leases | 0.00 | 0.00 | 0.00 | 8,285.69 |
| Repairs, Maintenance, Cleaning | 75.00 | 75.00 | 75.00 | 75.00 |
| Security | 0.00 | 0.00 | 84.77 | 0.00 |
| US Trustee Fees | 0.00 | 0.00 | 0.00 | 6,500.00 |
| Legal Fees | 2,500.00 | 0.00 | 0.00 | 0.00 |
| Corporate Support | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Office/Janitorial Supplies | 125.00 | 125.00 | 125.00 | 125.00 |
| Utilities | 0.00 | 2,200.00 | 0.00 | 0.00 |
| Cellular Phone | 0.00 | 0.00 | 53.86 | 0.00 |
| Landscaping | 0.00 | 500.00 | 0.00 | 0.00 |
| Courier Service | 0.00 | 139.81 | 0.00 | 0.00 |
| Cash Disbursements | 108,075.00 | 108,414.81 | 107,213.63 | 120,360.69 |
| | | | | |
| Net Cash Flow | ($6,275.00) | ($6,614.81) | ($5,413.63) | ($18,560.69) |

Projected April Cash Receipts & Disbursements
Danny's 59th Avenue, LLC

|  | April 5- April 11 | April 12- April 18 | April 18- April 24 | April 25- May 1 |
|---|---:|---:|---:|---:|
| **Cash Receipts** | | | | |
| Wash Sales | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Gasoline Sales | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Detail Sales | 5,500.00 | 5,500.00 | 5,500.00 | 5,500.00 |
| Wash Lobby Sales | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Sales Discounts & Allowances | (500.00) | (500.00) | (500.00) | (500.00) |
| Other Income | (600.00) | (600.00) | (600.00) | (600.00) |
| **Total Cash Receipts** | $26,600.00 | $26,600.00 | $26,600.00 | $26,600.00 |
| | | | | |
| **Cash Disbursements** | | | | |
| Gasoline | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| Wash Labor | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| Wash Supplies | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Detail | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 |
| Wash Lobby Inventory | 700.00 | 700.00 | 700.00 | 700.00 |
| Bank Charges | 0.00 | 0.00 | 600.00 | 0.00 |
| Credit Card Fees | 1,100.00 | 20.00 | 20.00 | 20.00 |
| Damages | 250.00 | 250.00 | 250.00 | 250.00 |
| Insurance | 0.00 | 0.00 | 500.00 | 0.00 |
| Admin Labor Expenses | 900.00 | 900.00 | 900.00 | 900.00 |
| Licenses, Taxes, Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Rent & Leases | 0.00 | 0.00 | 0.00 | 22,209.54 |
| Repairs, Maintenance, Cleaning | 200.00 | 200.00 | 200.00 | 200.00 |
| Security | 0.00 | 0.00 | 70.00 | 0.00 |
| US Trustee Fees | 0.00 | 0.00 | 0.00 | 4,875.00 |
| Legal Fees | 2,500.00 | 0.00 | 0.00 | 0.00 |
| Corporate Support | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Office/Janitorial Supplies | 100.00 | 100.00 | 100.00 | 100.00 |
| Telephone | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 0.00 | 4,200.00 | 0.00 | 0.00 |
| Cellular Phone | 0.00 | 0.00 | 189.42 | 0.00 |
| Landscaping | 0.00 | 500.00 | 0.00 | 0.00 |
| Courier Service | 0.00 | 139.81 | 0.00 | 0.00 |
| **Cash Disbursements** | 23,200.00 | 24,459.81 | 20,979.42 | 46,704.54 |
| | | | | |
| **Net Cash Flow** | $3,400.00 | $2,140.19 | $5,620.58 | ($20,104.54) |

Projected April Cash Receipts & Disbursements
Danny's Happy Valley, LLC

|  | April 5- April 11 | April 12- April 18 | April 18- April 24 | April 25- May 1 |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| Wash Sales | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| Gasoline Sales | 215,000.00 | 220,000.00 | 220,000.00 | 220,000.00 |
| Oil & Lube Sales | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| Detail Sales | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 |
| Window Tint Sales | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Wash Lobby Sales | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| C-Store Sales | 56,000.00 | 56,000.00 | 56,000.00 | 56,000.00 |
| Sales Discounts & Allowances | (1,700.00) | (1,700.00) | (1,700.00) | (1,700.00) |
| Other Income | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) |
| **Total Cash Receipts** | $338,800.00 | $343,800.00 | $343,800.00 | $343,800.00 |
| | | | | |
| **Cash Disbursements** | | | | |
| Gasoline | 203,000.00 | 208,000.00 | 208,000.00 | 208,000.00 |
| Wash Labor | 18,500.00 | 18,500.00 | 18,500.00 | 18,500.00 |
| Oil & Lube | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Wash Supplies | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 |
| Detail | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 |
| Window Tint | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Wash Lobby | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| C-Store Labor | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| C-Store Lobby Inv | 47,000.00 | 47,000.00 | 47,000.00 | 47,000.00 |
| Bank Charges | 0.00 | 0.00 | 1,000.00 | 0.00 |
| Credit Card Fees | 12,500.00 | 4,200.00 | 4,200.00 | 4,200.00 |
| Damages | 750.00 | 750.00 | 750.00 | 750.00 |
| Insurance | 0.00 | 0.00 | 3,500.00 | 0.00 |
| Admin Labor Expenses | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Licenses, Taxes, Fees | 3,400.00 | 3,400.00 | 3,400.00 | 3,400.00 |
| Rent & Leases | 15,500.00 | 0.00 | 0.00 | 0.00 |
| Repairs, Maintenance, Cleaning | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 |
| Security | 0.00 | 0.00 | 0.00 | 140.00 |
| US Trustee Fees | 0.00 | 0.00 | 0.00 | 10,400.00 |
| Legal Fees | 10,000.00 | 0.00 | 0.00 | 0.00 |
| Corporate Support | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Office/Janitorial Supplies | 750.00 | 750.00 | 750.00 | 750.00 |
| Telephone | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 0.00 | 0.00 | 9,000.00 | 0.00 |
| Auto Expenses | 68.00 | 68.00 | 68.00 | 68.00 |
| Cellular Phone | 0.00 | 0.00 | 243.28 | 0.00 |
| Landscaping | 0.00 | 0.00 | 500.00 | 0.00 |
| Courier Service | 0.00 | 0.00 | 139.81 | 0.00 |
| **Cash Disbursements** | 350,168.00 | 321,368.00 | 335,751.09 | 331,908.00 |
| | | | | |
| **Net Cash Flow** | ($11,368.00) | $22,432.00 | $8,048.91 | $11,892.00 |

Projected April Cash Receipts & Disbursements  
Danny's Raintree & Northsight, LLC

|  | April 5- April 11 | April 12- April 18 | April 18- April 24 | April 25- May 1 |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| Wash Sales | 26,000.00 | 26,000.00 | 26,000.00 | 26,000.00 |
| Gasoline Sales | 135,000.00 | 140,000.00 | 140,000.00 | 140,000.00 |
| Oil & Lube Sales | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| Detail Sales | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 |
| Window Tint Sales | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 |
| Wash Lobby Sales | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| C-Store Sales | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| Sales Discounts & Allowances | (2,000.00) | (2,000.00) | (2,000.00) | (2,000.00) |
| Other Income | (1,000.00) | (1,000.00) | (1,000.00) | (1,000.00) |
| **Total Cash Receipts** | $213,000.00 | $218,000.00 | $218,000.00 | $218,000.00 |
| | | | | |
| **Cash Disbursements** | | | | |
| Gasoline | 126,000.00 | 130,000.00 | 130,000.00 | 130,000.00 |
| Wash Labor | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Oil & Lube | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Wash Supplies | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Detail | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Window Tint | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| Wash Lobby | 750.00 | 750.00 | 750.00 | 750.00 |
| C-Store Labor | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| C-Store Lobby Inv | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 |
| Bank Charges | 0.00 | 0.00 | 1,000.00 | 0.00 |
| Credit Card Fees | 7,500.00 | 2,600.00 | 2,600.00 | 2,600.00 |
| Damages | 750.00 | 750.00 | 750.00 | 750.00 |
| Insurance | 0.00 | 0.00 | 2,500.00 | 0.00 |
| Admin Labor Expenses | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 |
| Licenses, Taxes, Fees | 2,250.00 | 2,250.00 | 2,250.00 | 2,250.00 |
| Repairs, Maintenance, Cleaning | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| Security | 0.00 | 0.00 | 144.00 | 0.00 |
| US Trustee Fees | 0.00 | 0.00 | 0.00 | 9,750.00 |
| Legal Fees | 10,000.00 | 0.00 | 0.00 | 0.00 |
| Corporate Support | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Office/Janitorial Supplies | 600.00 | 600.00 | 600.00 | 600.00 |
| Telephone | 0.00 | 0.00 | 0.00 | 0.00 |
| Utilities | 0.00 | 8,500.00 | 0.00 | 0.00 |
| Auto Expenses | 55.00 | 55.00 | 55.00 | 55.00 |
| Cellular Phone | 0.00 | 0.00 | 243.28 | 0.00 |
| Landscaping | 0.00 | 500.00 | 0.00 | 0.00 |
| Courier Service | 0.00 | 139.81 | 0.00 | 0.00 |
| **Cash Disbursements** | 218,405.00 | 216,644.81 | 211,392.28 | 217,255.00 |
| | | | | |
| **Net Cash Flow** | ($5,405.00) | $1,355.19 | $6,607.72 | $745.00 |